IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NAIMA URRUTIA, | : |
| Plaintiff, | : |
| v. | : 3:18-CV-01254 |
| | : (JUDGE MARIANI) |
| WAL-MART STORES, INC., | : |
| WAL-MART STORES EAST, LP, | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

This is a premises liability case arising out of a slip and fall incident in a Wal-Mart retail store in Milford, Pennsylvania on May 21, 2016. (Doc. 1). On May 21, 2018, Plaintiff filed a Complaint in Civil Action in the Court of Common Pleas of Pike County, Pennsylvania. (*Id*). The complaint asserts one count of negligence against Defendants Wal-Mart Stores, Inc. and Wal-Mart Stores East, LP, alleging that Plaintiff, Naima Urrutia, slipped on a slick, green substance on the floor of the grocery section in the Wal-Mart store causing her to fall. (*Id*). Plaintiff sustained serious injuries to her left ankle, left knee, back and neck, all requiring multiple surgeries. (*Id*). On June 21, 2018, Defendant removed the action to this Court based on diversity of citizenship jurisdiction. (*Id*).

1

Following completion of discovery, Defendant filed a Motion for Summary Judgment now pending before the Court. (Doc. 23). For the reasons set forth below, the Court will deny Defendant's motion for Summary Judgment.

## II. STATEMENT OF UNDISPUTED FACTS

Defendant Wal-Mart Stores East, LP has submitted a Statement of Undisputed Material Facts (Doc. 25) as to which it submits there is no genuine issue or dispute for trial. Plaintiff Naima Urrutia has submitted a response to Defendant's Statement of Undisputed Material Facts (Doc. 31) and the following facts have been admitted.[1]

On Saturday, May 21, 2016, Plaintiff left her home around 11:50 a.m.–12:00 p.m. to go food shopping at the Wal-Mart store located in Milford, Pennsylvania. (Doc. 25 at ¶ 9). The accident occurred after about 20-30 minutes of shopping when Plaintiff was walking in the area of the store where the bakery, produce and deli sections were located. (*Id.* at ¶¶ 8, 10). As she was walking to the deli section, Plaintiff slipped and fell near the banana table located in the produce section. (*Id.* at ¶¶ 14, 40). After falling, Plaintiff observed a thick, green substance on the floor, which she did not see at any point before she fell. (*Id.* at ¶¶ 13, 14, 15). Plaintiff did not know exactly what the green substance was or where it came from, but she suggested it might have been avocado or guacamole. (*Id.* at ¶¶ 7, 17).

---

[1] Facts deemed undisputed include those which Plaintiff admitted from Defendant's Statement of Undisputed Material Facts. Statements that Plaintiff admitted in part or were admitted with a qualification are only included in this section to the extent they were admitted.

To the extent that denials do not have a basis for denial in the record or merely disagree with a statement in an individual's properly quoted testimony, the Court will deem those asserted facts as admitted, and, where relevant, has included them in the statement of undisputed facts.

2

Rocco Fasulo was working as a store manager of the Milford Wal-Mart on May 21, 2016 when the accident occurred. (*Id.* at ¶¶ 33, 34). Mr. Fasulo testified that his normal routine as store manager was to walk the facility in the morning, including the grocery area, to ensure the store was prepped and ready for the day. (Fasulo Dep. 22–22).

On the morning of May 21, Mr. Fasulo walked through the area of the banana table, where Plaintiff fell, about three times. (Doc. 25 at ¶¶ 42, 45, 47). Though the exact time range is disputed by the parties, these walks all occurred sometime after 11:00 a.m. and before Plaintiff's fall at 12:11 p.m. (*Id.* at ¶¶ 24, 42, 45, 47).[2] Mr. Fasulo testified that he first passed through the area near the banana table sometime between 11:00 and 11:45 a.m. as he was walking to retrieve a cart. (Fasulo Dep. at 27). Mr. Fasulo walked through the same area for a second time, this time pushing the cart he retrieved. (*Id.* at 30–31). He later walked through the same area of the produce section again for a third time. (*Id.* at 31–32). Each time he walked through the area, Mr. Fasulo did not see any substance on the floor near the banana table. (Doc. 25 at ¶¶ 44, 45).

Mr. Fasulo testified that he was about 10 feet from Plaintiff when she fell. (*Id.* at ¶ 48). Although he did not know what caused Plaintiff to slip, when he went over to Plaintiff, he saw her on the floor as well as a "dollop of something green." (*Id.* at ¶¶ 49, 52). He

---

[2] Though Plaintiff denies the 11:00 a.m. to 12:00 p.m. time range offered by Defendant as being inconsistent with other parts of Mr. Fasulo's testimony, Mr. Fasulo did answer affirmatively when asked by the attorney during his deposition if this was the correct time range. (Fasulo Dep. at 27). Plaintiff offers the time range for these walks as 11:00 a.m. to 11:45, as what was specifically stated by Mr. Fasulo during his deposition. (Fasulo Dep. at 29). However, Mr. Fasulo only specifically indicated the 11:00 a.m. to 11:45 a.m. time range for his <u>first</u> pass, not that it was the total time range of all his walks through the area. *Id.*

further described the substance near Plaintiff as pasty green, the size of a half dollar, dull, and avocado-like. (Fasulo Dep. at 38–39).

On May 21, 2016, Sergio Ocasio was employed as assistant store manager over the "fresh area" at the Milford Wal-Mart. The "fresh area" of the Wal-Mart store included the produce, bakery, and deli sections. (Doc. 25 at ¶ 62). Mr. Ocasio's normal routine when he began work was to immediately walk the entire fresh area to make sure the floors were clean. (*Id.* at ¶ 67). Mr. Ocasio testified that he was in the store on the date of the incident at issue.[3] (Ocasio Dep. at 13–15).

On May 21, 2016, Mr. Ocasio took an accident report for Plaintiff's fall. (Doc. 25 at ¶ 63). Mr. Ocasio did not know what the substance was that Plaintiff slipped on, but he stated that it was green, pasty, and the size of a quarter. (*Id.* at ¶ 65). Mr. Ocasio also did not know how long the substance was located on the floor before Plaintiff fell. (*Id.* at ¶ 72). Mr. Ocasio further testified that no one made any complaints about any debris along the banana table between 7:00 a.m. and 12:10 p.m. (*Id.* at ¶ 73).

A Wal-Mart surveillance video was recording parts of the produce, bakery and deli section as Plaintiff was walking through the area and at the time of her fall on May 21, 2016.

---

[3] Despite Mr. Ocasio testifying several times during his deposition that he was present in the store on May 21, 2016, Plaintiff denies this fact as inconsistent with other parts of his testimony. Namely, Plaintiff asserts that Mr. Ocasio testified that he did not recall exactly what he did at the store during the morning of May 21 (*See* Ocasio Dep. at 11), and he never identified himself in the store surveillance video. (Doc. 31 at ¶¶ 68, 69). Any inconsistencies in Mr. Ocasio's testimony go only to factual issues about what he was specifically doing in the store on May 21, and at what time. Nothing in Mr. Ocasio's testimony, or any other evidence in the record, place in dispute Mr. Ocasio's repeated statements that he was in the store working at the time Plaintiff fell.

4

(*Id.* at ¶¶ 20, 27). At her deposition, Plaintiff identified herself in the video from a still shot taken at 12:03:31 p.m., which shows Plaintiff wearing a blazer, pants and brown shoes holding a pocket book in her left arm. (*Id.* at ¶ 20). Plaintiff also identified herself in a still shot of the video taken at 12:10:36 p.m. coming from the bakery area going towards the deli. (Urrutia Dep. at 73). Plaintiff further identified herself in a still shot of the video taken at 12:11:08 p.m. falling on her way to pick up her shopping cart. (*Id.* at 74).[4]

## III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality,... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary

---

[4] Plaintiff's counsel denies that Plaintiff identified herself in the store video at 12:10:36 p.m. and 12:11:08 p.m., but Plaintiff's deposition testimony clearly demonstrates that when asked if she could see herself in the video at several points in time, she confirmed. (Urrutia Dep. at 73–74).

judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is necessary.[5]

## IV. ANALYSIS

Plaintiff brings this premises liability action against Defendant on the theory of negligence. "Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." *Merlini ex rel. Merlini v. Gallitzin*

---

[5] *See Guidotti v. Legal Helps Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013):

Under Rule 56, . . . a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party asserting that there is a genuine dispute of material fact must support that assertion by "citing to particular parts of ... the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A). In evaluating the motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

716 F.3d at 772. *See also, Doebblers' Penn. Hybrids, Inc. v. Doebbler*, 442 F.3d 812, 820 (3d Cir. 2006)(stating that credibility determinations "are inappropriate to the legal conclusions necessary to a ruling on summary judgment. . . .A District Court should not weigh the evidence and determine the truth itself, but should instead determine whether there is a genuine issue for trial."); *J.F. Feeser, Inc v. Serv-A-Portion, Inc.*, 909 F.2d. 1254, 1531 (3d Cir. 1990) ("We are keenly aware that credibility determinations are not the function of the Judge; instead the non-movant's evidence must be credited at this stage.").

7

*Water Auth.*, 980 A.2d 502, 506 (2009) (internal citations and quotation marks omitted). Under Pennsylvania law, a plaintiff bringing a cause of action for negligence must establish the four basic elements of duty, breach, causation, and damages. *Loughtan v. The Phillies*, 888 A.2d 872, 874 (Pa. Super. 2005).

Pennsylvania courts have adopted the Restatement (Second) of Torts in determining the duty owed by a possessor of land to a person on his land. *Carrender v. Fritterer*, 469 A.2d 120, 123 (Pa. 1983). Under this approach, the standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee. *Id.* (citing *Davies v. MacDowell National Bank*, 180 A.2d 21 (Pa. 1962)).

Here, the parties agree that Plaintiff qualifies as an invitee. *See* Restatement (Second) of Torts § 332 (defining an "invitee" to include "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealing with the possessor of the land").

Possessors of land owe a duty to protect invitees from foreseeable harm only when the possessor knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees. *Carrender*, 469 A.2d at 123 (citing Restatement (Second) of Torts § 343 (1965)). In other words, an invitee must prove either the possessor of the land had a hand in creating the harmful condition or he had actual or constructive notice of such condition. *Estate of Swift v. Ne.*

*Hosp.*, 690 A.2d 719, 723 (Pa. Super. Ct. 1997) (quoting *Moultry v. Great Atl. & Pac. Tea Co.*, 422 A.2d 593, 598 (Pa. 1980)).

With respect to the elements of Plaintiff's negligence claim, Defendant seeks summary judgment on the theory that Plaintiff has not put forth sufficient evidence to show that there is a genuine dispute for trial as to whether Wal-Mart had constructive notice of a dangerous or defective condition. Constructive notice requires proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant should have known of its presence. *Martino v. Great Atl. & Pac. Tea Co.*, 213 A.2d 608, 610-11 (Pa. 1965). When determining whether a defendant had constructive notice, "[o]ne of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident." *Craig v. Franklin Mills Assocs, L.P.*, 555 F.Supp.2d 547, 550 (E.D. Pa. 2008) (quoting *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. 2001)).

Defendant argues that "[s]ummary judgment should be entered in favor of Defendant Wal-Mart because there is no evidence to establish any of the following: what the green substance was or its source; how the green substance got on the floor; and the duration of time the green substance was on the floor." (Doc. 24 at 23). In particular, Defendant argues that summary judgment "should be entered in favor of Defendant Wal-Mart simply on the point that there is no evidence to establish that the green substance was on the floor for an extended length of time, and duration of the hazard is one of the most important

factors." (*Id.* at 24). *See Craig*, 555 F.Supp.2d at 550. Therefore, the key issue that defendant raises is the length of time the green substance remained on the floor of Wal-Mart before Plaintiff fell. Here, drawing all reasonable inferences in favor of Plaintiff, the Court finds that Defendant has not met its burden of showing the absence of a genuine dispute of material fact for trial.

On the question of duration of the condition, one of the most significant issues in this case is the final time a Wal-Mart employee inspected the produce section near the banana table before Plaintiff fell. In its supporting brief, Defendant claims "there is no evidence to establish that the green substance was on the floor for an extended length of time" and that "there is no evidence to suggest that employees walked past the green substance any time before Plaintiff encountered it." (Doc. 24 at 24). In support of this assertion, Defendant's Statement of Undisputed Material Facts repeatedly set forth factual assertions to establish that Mr. Fasulo walked the area where Plaintiff fell three times between 11:00 a.m. and 12:00 p.m., and that he never noticed anything on the floor. (Doc. 25 at ¶¶ 42, 45, 47).

Plaintiff disputes the 11:00 a.m. to 12:00 p.m. time range on the basis that this was merely the time suggested by Plaintiff's counsel during the deposition as part of his questioning, rather than a time period explicitly identified by Mr. Fasulo himself. (Doc. 31 at ¶ 38, 41; Fasulo Dep. at 26). Plaintiff argues that the only time range for these walks that Mr. Fasulo explicitly stated during his testimony without being prompted by counsel was

between 11:00 a.m. and 11:45 a.m. (Doc. 25 at ¶ 38, 41; Fasulo Dep. at 29).[6] However, Mr. Fasulo only specifically identified the 11:00 a.m. to 11:45 a.m. timeframe for the *first* of his three walks through in the area near the banana table. (Fasulo Dep. at 29). Mr. Fasulo did not offer any more specific time ranges for his second or third walks through the produce section during his testimony. (*Id.* at 30–32). The only other explicit indication from Mr. Fasulo regarding the timing of his walks through the produce section was "So *from 11:00 a.m.*, I was walking the store." (*Id.* at 26).

It is unclear whether this discrepancy creates a true dispute of fact. While it is true that it was Plaintiff's attorney who suggested the 11:00 a.m. to 12:00 p.m. time range when deposing Mr. Fasulo, Mr. Fasulo did answer affirmatively when asked to confirm that this time range was correct. (*Id.* at 27). Either way, the 11:00 a.m. to 12:00 p.m. time range offered by Defendant in support of its motion for summary judgment is, without more, too imprecise to establish that Mr. Fasulo inspected the produce area close enough in time to Plaintiff's slip at 12:11 p.m. to remove from the province of the jury whether Defendant should be charged with constructive notice of the green substance, whose existence on the floor where Plaintiff fell is undisputed.

The time of Mr. Fasulo's final inspection of the produce area is not clarified by the Wal-Mart surveillance video offered by Defendant. Defendant's counsel referenced the

---

[6] It is worth noting that although Plaintiff denies this 11:00 a.m. to 12:00 p.m. range, it was *Plaintiff's counsel* who suggested it twice during his deposition questions. (*See* Fasulo Dep. at 26–27).

11

video several times during Mr. Fasulo's deposition. (*Id*. 54–59). Counsel instructed him to point out specific time stamps between 12:08:29 p.m. and 12:21:27 p.m. where he was able to identify Plaintiff, identify himself, and describe the store's floor. (*Id*). However, Defendant failed to obtain testimony from Mr. Fasulo, or otherwise provide the Court, with any exact timestamps before 12:00 p.m. where Mr. Fasulo can be seen touring the produce section. Thus, although Mr. Fasulo testified that he walked through the area at issue approximately three times after 11:00 a.m., the record does not reflect the specific times that this occurred between 11:00 a.m. and 12:00 p.m.

The record is also unclear regarding the exact times Mr. Ocasio appeared in the surveillance video. Defendant's counsel asked whether, during his review of the video before testifying at deposition, Mr. Ocasio was able to see himself in the video "before Ms. Urrutia's fall." (Ocasio Dep. at 23). Mr. Ocasio replied that he was able to see himself in the video, and he distinguished himself because he has a "store recap," or a piece of paper, hanging out of the back of his pocket. *Id*. But neither Mr. Ocasio nor defendant's counsel gave any specific pinpoints of Mr. Ocasio's appearances in the video before Plaintiff's fall. Mr. Ocasio only identified himself for the record in the video at 12:11:25 p.m., after Plaintiff's fall. (*Id*. at 25–26).

In addition, a document prepared by Claims Management, Incorporated following their interview of Mr. Fasulo on May 27, 2016 further places in question the timing of Mr. Fasulo's final inspection of the Wal-Mart produce section on May 21, 2016. (Doc. 25 at ¶

12

53–55). The document, which was read by Mr. Fasulo during his deposition, states that he "pushed a rocket cart over the area where the claimant slipped/fell about *two minutes* before."[7] (*Id.* at ¶ 54). Assuming Wal-Mart would be able to properly authenticate this Claims Management document at trial and the document was found to be admissible, the statements contained within it create an internal conflict in Mr. Fasulo's testimony regarding the time of walks through the produce section.

Defendant's failure to inquire of Mr. Fasulo and Mr. Ocasio of the specific moments they could see themselves on the videotape, or otherwise place of record the specific times that these employees were present in the produce section where Ms. Urrutia fell, despite having the videotape available, further supports this Court's reasoning that Defendant failed to meet its burden on summary judgment. Although Defendant's brief in support of its motion relies upon a number of cases where there was no evidence to indicate how long a substance or object was on the floor, here, there is evidence, if credited by the jury, to establish this timeline through the specific identification, as shown on the videotape, of these employees who state that they did not see anything on the floor prior to the slip, and the specific time that they would have been in that area such that they would have had the

---

[7] Plaintiff denies the statements from the Claims Management document quoted in Defendant's Statement of Undisputed Material Facts as inadmissible hearsay. However, it is well settled that hearsay statements may be considered on a motion for summary judgment if they are capable of admission at trial. *Shelton v. Univ. of Med. & Dentistry of New Jersey*, 223 F.3d 220, 223 n.2. (3d Cir. 2000) (citations omitted).

13

opportunity to notice the green substance. Thus, trial is necessary to allow a determination of this factual dispute.

Ultimately, the evidence of record is in dispute as to the final time a Wal-Mart employee inspected the floors of the produce area before Plaintiff's fall. The only undisputed facts that can be distilled from the record on this issue are that Mr. Fasulo started walking through the Wal-Mart store at 11:00 a.m., and that he walked by or through the produce section approximately three times prior to Plaintiff's slip and fall. However, these facts do not establish whether the green substance existed on the Wal-Mart floor long enough to give Defendant constructive notice of a dangerous condition. As both parties have noted, what exactly constitutes constructive notice of a defective or dangerous condition varies depending on the circumstances of each case. *See Farina v. Miggys Corp. Five & Six*, 2010 WL 3024757 (M.D. Pa. 2010); *see also Branch v. Phila. Transp. Co.*, 96 A.2d 860, 862 (Pa. 1953) ("There could conceivably be a situation where 5 minutes would be adequate notice and where 5 hours would be inadequate notice."). In a high traffic shopping area, circumstantial evidence pointing to a 25-minute duration could reasonably lead a jury to find that Wal-Mart should have been aware of a dangerous condition. (Doc. 30 at 15); *see Rumsey v. Great Atl. & Pac. Tea Co.*, 408 F.2d 89, 90–91 (3d. Cir. 1969) (finding the presence of "brown, wilted," and "old" lettuce in a busy area of the store showed that the hazard was on the floor long enough to give the defendant constructive notice of their presence). Based on the record before the Court, a reasonable jury could find that all of Mr.

Fasulo's inspections of the produce section concluded at some point far enough prior to 12:00 p.m. to give Defendant constructive notice of a dangerous condition by the banana table. Therefore, Defendant has not met its burden of showing the absence of a genuine issue as to any material fact.

At this stage of the proceedings, Plaintiff's claim that Defendant had constructive notice of a dangerous condition relies on the alleged thickness of the green substance[8], and an assertion, only marginally supported by the testimonial evidence, that the area near the banana table had not been inspected since at least 11:45 a.m. (Doc. 30 at 7–8). Plaintiff presents nothing further to show how long the green substance remained on the floor. Nonetheless, summary judgment must be denied, as disputes of fact are within the province of the jury, not the Court.

Here, it is undisputed that Plaintiff fell in the Wal-Mart store on May 21, 2016 around 12:11 p.m. However, it is disputed whether the green substance was the actual cause of her slip. Defendant states "[p]laintiff admitted she only saw **the substance that caused her to fall** after she fell describing it as a thick green substance." (Doc. 25 at ¶ 13) (bold added). This statement might appear to be admission that Plaintiff slipped on the thick green substance, but it is not made clear. A dispute arises in the conflicting deposition

---

[8] In her brief, Plaintiff makes a conclusory claim that the green substance had "thickened" as evidence of passage of time, demonstrating it existed long enough in a heavily traveled produce section that it should have been observed and corrected by the defendant (Doc. 30 at page 7–8). Importantly, Defendant points out the Plaintiff did not actually say the word "thickened" in her testimony, but rather that the substance "was thick." Whether the substance was thick tells the Court, or any trier of fact, nothing about how long it spent on the floor.

testimony regarding whether there were track marks in green substance after Plaintiff fell. During his deposition, Mr. Fasulo said there were no marks on the dollop after Plaintiff slipped. (Fasulo Dep. at 39). Mr. Ocasio similarly characterized the green substance during his deposition when confirming the statements he gave to Claims Management on May 27, 2016 regarding Plaintiff's accident. (Ocasio Dep. at 30). Mr. Ocasio read "[i]t appeared to be fresh and he didn't see any slide marks in it." (*Id.* at 30). However, Plaintiff argues whether there were marks in the green substance after her fall is a highly disputed fact. (Doc. 31 at ¶ 66). During her deposition, Plaintiff testified multiple times that she stepped in the green substance, it was the cause of her fall, and it got on her shoe. (Urrutia Depo. at 44–46). As a result, a triable issue of fact appears to exist as to whether the green substance on the floor was, in fact, the cause of Plaintiff's slip.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge